Opinion issued February 27, 2003.







     







In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00587-CR




HIGINIO CORDOVA CANCEL, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 894112




MEMORANDUM OPINION

          Appellant, Higinio Cordova Cancel, was charged by indictment with
possession with intent to deliver more than 200 grams of cocaine. Appellant pled
guilty, and the trial court assessed punishment at 35 years’ confinement. Appellant
challenges his conviction by arguing that the trial court erred in denying his motion
to suppress, in which he sought to suppress the cocaine recovered when police
officers searched a bag he was carrying in an airport. Specifically, appellant contends
that the trial court erred by denying his motion to suppress because (1) the police
officers lacked reasonable suspicion sufficient to justify his detention, and (2) the
police officers did not have his valid consent to search the bag. We affirm appellant’s
conviction.
Background
          Houston Police Officers Bill Corley and Bobby Hebert noticed appellant while
he was standing in line at an airline ticket counter at Hobby Airport. At the hearing
on appellant’s motion to suppress, Officer Corley testified that he and Officer Hebert
were assigned to the narcotics interdiction unit at Hobby Airport, and that they
noticed appellant because he was wearing baggy clothing, carrying only a small tote
bag, and acting nervously by constantly looking over his shoulder. The officers saw
appellant go to the ticket agent and pay cash for his ticket. After appellant left the
counter, Officer Corley approached the ticket agent and confirmed that appellant had
in fact paid cash and that he had purchased a one-way ticket to Hartford, Connecticut
on a flight scheduled to leave in the next half an hour. After appellant purchased his
ticket, the officers followed him into the concourse. They watched him enter and
leave a men’s room, and they then followed him to his departure gate. 
          At the departure gate, appellant placed his tote bag on a chair near a concession
stand. While Officer Hebert stood a few feet away, Officer Corley approached
appellant, showed his identification to appellant, and asked appellant if the officers
could speak to him. Both officers were dressed in street clothes, and neither
displayed a weapon. Officer Corley testified that appellant agreed to speak with him,
and appellant appeared to understand English. Officer Corley asked appellant if he
was waiting for a flight, and appellant replied “yes.” Officer Corley also asked
appellant about his destination, but appellant appeared to have difficulty
understanding the word “destination,” so Officer Corley rephrased the question as
“sitebas.”


 Appellant answered “Connecticut.” Officer Corley then asked if he could
look at his ticket, and appellant handed the ticket to him. After inspecting the ticket,
Officer Corley returned the ticket to appellant. Officer Corley asked appellant for
identification, and appellant produced a Connecticut identification card. Officer
Corely verified that the identification card was consistent with the information on the
ticket. Officer Corley then told appellant that he and Officer Hebert were narcotics
officers and asked appellant whether he was carrying any narcotics. Appellant
answered, “No.” Officer Corley asked appellant whether he had any luggage. 
Appellant pointed to the tote bag a short distance away. Appellant confirmed that it
was his only bag. Appellant gave his permission for the officers to search the tote
bag. Officer Corley unzipped the tote bag and prepared to look through it. At that
point, Officer Hebert suggested that appellant accompany them to a nearby men’s
room. Still holding the tote bag, Officer Corley pointed to a men’s room
approximately 30 feet away, and the officers, with the tote bag, followed appellant
as he walked into the men’s room. In the men’s room, the officers conducted a pat-down search and further examined the contents of the bag. They found a kilo of
cocaine wrapped in plastic wrap at the bottom of the bag. In addition, the officers
saw that appellant was wearing a compression-type girdle under his baggy clothes
and had cellophane around his waist. The officers then placed appellant under arrest. 
Standard of Review
          Appellant argues that the trial court erred in denying his motion to suppress
because (1) the police officers did not have reasonable suspicion sufficient to justify
his detention, and (2) he did not give valid consent to the search of the bag. When
reviewing the trial court’s ruling on the motion to suppress, we apply a bifurcated
standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). 
We give almost total deference to the trial court’s determination of historical facts,
while we conduct a de novo review of the trial court’s application of the law to those
facts. Id. During a motion to suppress hearing, the trial court is the sole trier of fact;
accordingly, the trial judge may choose to believe or disbelieve all or any part of a
witness’s testimony. See State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000);
King v. State, 35 S.W.3d 740, 742 (Tex. App.—Houston [1st Dist.] 2000, no pet.). 
When, as here, no findings of fact are filed, we must view the evidence in the light
most favorable to the ruling and sustain the decision if it is correct on any applicable
theory of the law. Ross, 32 S.W.3d at 855-56; King, 35 S.W.3d at 742.
Analysis
The Encounter
          In his first issue, appellant argues that the exchange between himself and the
police officers at the departure gate was an unreasonable detention and that the search
arising from that detention was therefore also unreasonable. “Not every encounter
between police and citizens involves a seizure or otherwise implicates the Fourth
Amendment.” Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991);
Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). An officer may
approach a person in a public place and merely ask questions without a detention
occurring. Florida v. Royer, 460 U.S. 491, 497-98, 103 S. Ct. 1319, 1324 (1983); 
Francis v. State, 896 S.W.2d 406, 408-09 (Tex. App.—Houston [1st Dist.] 1995), 
pet. dism’d, 922 S.W.2d 176, 177 (Tex. Crim. App. 1996). Further, an officer may
generally ask questions of a particular individual or ask to examine the person’s
identification as long as the officer does not convey a message that compliance with
his request is required. Bostick, 501 U.S. at 435, 111 S. Ct. at 2386; Hunter, 955
S.W.2d at 102. An encounter becomes an investigative detention when a reasonable
person would believe he was not free to leave, and he has yielded to the officer’s
show of authority or been physically forced to yield. Johnson v. State, 912 S.W.2d
227, 236 (Tex. Crim. App. 1995). In determining whether the exchange between
appellant and the officers was a consensual encounter or an investigative detention,
the dispositive question is whether, considering the totality of the circumstances, the
officers’ conduct would have communicated to a reasonable person that he was not
free to decline the officers’ requests or otherwise terminate the encounter. See
Hunter, 955 S.W.2d at 104; State v. Velasquez, 994 S.W.2d 676, 679 (Tex. Crim.
App. 1999).
          Relying on the United States Supreme Court’s opinion in Bostick, the Court of
Criminal Appeals has stated that “asking for identification and permission to search
a person’s bags does not automatically mean that a detention has occurred.” Hunter,
955 S.W.2d 105. In Hunter, the Court of Criminal Appeals analyzed an encounter
similar to the one at issue here: two police officers, dressed in plain clothes and not
displaying weapons, approached Hunter at a Houston bus station and asked to speak
with him. Id. at 103. One officer spoke with Hunter while the other officer remained
at a short distance. Id. The officer speaking with Hunter asked him where he was
going and asked if he could see the bus ticket. Id. Hunter gave the officer his ticket,
which the officer examined and then returned. Id. The officer also asked Hunter for
his identification, and then informed him that he was conducting a narcotics
investigation. Id. Finally, the officer asked Hunter for permission to look inside the
bag that Hunter was carrying with him, informing him at the same time that he did not
have to agree to the search. Id. The court in Hunter held that, considering all the
circumstances, the exchange was an encounter rather than a detention because the
officers did not convey a message that compliance with their requests was
required—the officers were in street clothes and did not display weapons; they did
not surround the defendant, but instead stood apart from each other; the officer who
examined Hunter’s ticket gave it back to him; neither officer stated a belief that
Hunter was carrying drugs; Hunter was specifically told that he did not have to agree
to the search of his bag; and the officers did not tell Hunter that they would get a
search warrant if he refused to consent. Id. at 104. 
          In this case, appellant argues a detention occurred because Officer Corley did
not inform appellant that he was free to leave or to decline to answer questions. In
Citizen v. State, this Court concluded that the exchange between police and the
defendant in that case was also a consensual encounter, notwithstanding the officer’s
failure to inform the defendant that “he was free to decline the officer’s requests or
otherwise terminate the encounter.” 39 S.W.3d 367, 371 (Tex. App.—Houston [1st
Dist.] 2001, no pet.). Appellant also argues that the exchange was a detention
because, after beginning the search of the tote bag, Officer Corley picked up
appellant’s bag and pointed at the men’s room. However, at the point Officer Corley
directed appellant to the men’s room for further search, appellant had already
voluntarily consented to the search of his tote bag. We hold that the trial court did
not err by denying appellant’s motion to suppress on the ground that the officers
unreasonably detained appellant. We overrule appellant’s first issue. 
Consent
          In his second issue, appellant argues that his consent to the search of his bag
was involuntary. Appellant further argues that the State did not meet its burden of
proving by clear and convincing evidence that consent was voluntarily given. 
          A search pursuant to voluntary consent is an exception to the requirement that
a search be based upon a warrant supported by probable cause. See Reasor v. State,
12 S.W.3d 813, 817 (Tex. Crim. App. 2000). For consent to be valid, however, it
must be voluntary. Id. at 817-18. “The Fourth Amendment test for a valid consent
to search is that the consent be voluntary, and ‘[v]oluntariness is a question of fact to
be determined from all the circumstances.’” Carmouche, 10 S.W.3d at 331 (quoting
Ohio v. Robinette, 519 U.S. 33, 40, 117 S. Ct. 417, 421 (1996)). To determine
voluntariness, trial courts “must [assess] the totality of all the surrounding
circumstances—both the characteristics of the accused and the details of the
interrogation.” Reasor, 12 S.W.3d at 818. 
          Under the Texas Constitution, the State is required to prove by clear and
convincing evidence that consent was voluntarily given. State v. Ibarra, 953 S.W.2d
242, 243 (Tex. Crim. App. 1997). Voluntary consent is consent that is not coerced,
by explicit or implicit means, by implied threat or covert force. Carmouche, 10
S.W.3d at 331. Factors the courts have considered include the person’s age,
education, and intelligence; the warnings about constitutional rights the person was
given; the length of the detention; the repetitiveness of the questioning; and the use
of force including handcuffing and weapons. Reasor, 12 S.W.3d at 818. Although
a police officer’s failure to inform the accused that he can refuse consent is a factor
to consider, the absence of such information does not automatically render the
accused’s consent involuntary. Johnson v. State, 69 S.W.3d 644, 653 (Tex. Crim.
App. 2002). Finally, an officer’s testimony that consent was voluntarily given can
be sufficient evidence to prove that it was. Martinez v. State, 17 S.W.3d 677, 683
(Tex. Crim. App. 2000); Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim. App.
1991). 
           Appellant argues that his inability to understand English, the failure of the
officers to explain to him that he could refuse to consent to the search or walk away
from them at any time, the failure of the officers to present him with consent signature
forms, his cultural background, and his deficient education made his consent invalid. 
However, the ability of a suspect to speak fluent English or the ability of a police
officer to speak fluent Spanish is not a prerequisite of a valid consent to search. See
Cuero v. State, 845 S.W.2d 387, 393 (Tex. App.—Houston [1st Dist. 1992], pet.
ref’d) (finding that, in totality of circumstances, native Spanish speaker’s consent to
search was valid despite his contention that he did not understand English); Mendoza
v. State, 30 S.W.3d 528, 532 (Tex. App.—San Antonio 2000, no pet.) (finding
consent to search was voluntarily given in spite of officer’s mispronunciation of
Spanish word “vista” as “vestir”); Moreno v. State, 821 S.W.2d 344, 350-51 (Tex.
App.—Waco, 1991, pet. ref’d) (finding that consent was voluntary in spite of
officer’s misuse of “esculcar” instead of correct Spanish word “escular” to request
permission to search). Additionally, we find the Court of Criminal Appeals’
description of the required voluntariness of consent instructive:
Of course, “consensual” is a relative term. We doubt that [appellant]
was overjoyed to be questioned by a police officer—especially in light
of his bag’s contents. And even an innocent passenger’s pulse might
race when a police officer identifies himself and begins asking
questions. He might understandably be uncomfortable saying, “Officer,
I don’t want to talk to you. Please leave me alone.” But the
Constitution does not guarantee freedom from discomfort. And the test
is not whether a timid person would feel free to terminate the interview. 
Instead, the Supreme Court uses a “reasonable person standard.”

Velasquez, 994 S.W.2d at 679.
          In this case, appellant gave his consent to the search after a consensual
encounter with Officers Corley and Hebert in the airport concourse. The trial court
was presented with the testimony of both Officers Corley and Hebert, who described
the encounter and appellant’s ability to communicate with them and understand their
questions. The trial court also heard evidence regarding the conversational tone of
the officer’s inquiries, that the officers did not display their weapons or surround
appellant, and that the officers did not threaten appellant or attempt to intimidate him. 
In light of all the circumstances, we hold that appellant’s consent to search the tote
bag was voluntarily given and thus, the trial court did not err by denying appellant’s
motion to suppress. Appellant’s second issue is overruled.Conclusion
          We affirm appellant’s conviction.
 
 

 
 
                                                             George C. Hanks, Jr.
                                                             Justice
Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).